2022 IL App (1st) 210571-U

No. 1-21-0571

Second Division
May 24, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| HASSAN A. MUHAMMAD, | ) | Appeal from the Circuit Court of Cook County. |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | No. 15 CH 9224 |
|  | ) |  |
| CITIZENS BANK, MB PROPERTY INSPECTION, and CORONA INVESTMENTS, | ) | Honorable Neil Cohen Judge, presiding. |
|  | ) |  |
| Defendants-Appellees. | ) |  |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court's grant of summary judgment in favor of each defendant is affirmed where plaintiff presented no admissible evidence to create a genuine issue of material fact.

¶ 2   This action stems from plaintiff-appellant Hassan A. Muhammad's claims related to his alleged eviction from the property located at 7713 S. Winchester Avenue in Chicago (the property). Following protracted litigation and discovery, each named defendant-appellee, *i.e.*

Citizens Bank (Citizens), MB Property Inspection (MB), and Corona Investments (Corona), moved for summary judgment, which the circuit court granted. Plaintiff now appeals *pro se*, arguing that the circuit court erred in granting summary judgment in favor of defendants. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Prior to initiating the instant action, plaintiff was a defendant in a 2009 foreclosure action related to the property. *Citizens Bank, N.A. f/k/a RBS Citizens, N.A. v. Hassan A. Muhammad a/k/a Hassam Muhammad, et. al.*, No. 09-CH-001216 (Cir. Ct. Cook County, Jan. 20, 2015). On January 20, 2015, judgment for foreclosure and sale was entered with respect to the property. The court denied plaintiff's motion to vacate. On June 30, 2015, an order approving report of sale and distribution, confirming sale, and order of possession was entered, which granted possession of the property to the successful bidder, which was Corona. The order also directed the Cook County Sheriff to evict and dispossess plaintiff from the property 30 days after entry of the order.

¶ 5                              A. Plaintiff's Complaint

¶ 6      On June 11, 2015, plaintiff, who at all times proceeded *pro se* in the instant action, filed a complaint in the Cook County circuit court. Following two years of litigation, on November 16, 2017, plaintiff filed his third amended complaint, upon which this appeal is based. The complaint alleged "wrongful eviction, lock out and ejectment" based on events occurring on or about November 4, 2014, as to Citizens and MB (count I) and on or about April 20, 2015, as to all three defendants (count II and VI), constructive eviction based on events occurring on or about November 4, 2014, as to Citizens and MB (count III) and on or about April 20, 2015, as to all three defendants (counts IV and VII) and breach of contract as to Citizens (count V).

¶ 7    The basic allegations underlying plaintiff's complaint are as follows. Plaintiff had a mortgage with Citizens Bank. On or about November 4, 2014, plaintiff returned to the property, discovered that the locks had been changed and a notice was affixed to the front door. The notice, which was dated November 6, 2014, stated:

> "The property has been determined to be vacant. The information will be provided to the mortgage servicer. The mortgage servicer intends to protect this property from waste [and/or] deterioration. The property may have its locks replaced and/or plumbing system winterized within the next several days.
>
> If this property is NOT VACANT, please call your mortgage servicer immediately."

The notice listed MB as the vendor and it was signed by Jerry Shafer (now deceased). Plaintiff contacted Citizens, MB, and Codilis & Associates, P.C. (the attorneys involved in the foreclosure action).

¶ 8    On or about November 10, 2014, Codilis contacted plaintiff, stating they would obtain keys for the property from Citizens or MB. On or about November 11, 2014, an agent of MB provided plaintiff with keys to the property. Upon entering the property, plaintiff discovered personal items were missing.

¶ 9    Then, on or about April 20, 2015, plaintiff returned home to find that his home had been broken into, that all of the doors had been boarded up or blocked, and that more of his personal property had been removed. A notice identical to the one described above was also affixed to the door and dated April 24, 2015.[1] Plaintiff's complaint alleged that, on that day, two of his neighbors,

---

[1] Photographs of these notices were included in Citizens' discovery production and were attached as exhibits to several summary judgment motions.

Sheldon White and "YoYo," observed individuals installing new locks, removing personal property, and boarding up the doors to the property. Plaintiff never regained entry into the property. As stated above, the foreclosure action was completed and the property was sold to Corona in June 2015. Plaintiff moved out of the property on June 30, 2015.

¶ 10    All three defendants filed answers to the third amended complaint denying plaintiff's allegations.

¶ 11                                B. Depositions

¶ 12    On January 19, 2019, plaintiff was deposed. We provide plaintiff's testimony from the deposition as is relevant to this appeal.

¶ 13    Plaintiff testified that, upon discovering the locks had been changed on the property in November 2014, he contacted MB, Citizens, and Codilis. Following several conversation with "people at Codilis," Codilis arranged for someone to provide plaintiff with keys to the property. To this end, plaintiff testified that he spoke in person with and received a key from an employee of MB; however, he did not remember the date on which they spoke or the person's name (he later appears to refer to this same person as "Jerry"). According to plaintiff, this person confirmed that he had changed the locks on behalf of MB. Further, plaintiff claimed that White and Yo-Yo had information regarding the incident but he was not sure specifically what information they had. When asked if he had any other evidence that an individual from MB performed any lock services at the property, plaintiff responded that "MB's document," presumably the work order, "called for an interior inspection" and "that is, in fact, evidence, *prima facie*, if nothing else." He further stated that he did not know "why an employee would ignore the order to perform the inspection that was called for." Plaintiff admitted that he did not know what the relationship was between Citizens,

MB, and Corona. In regards to the April 2015 incident, plaintiff testified that he did not recall speaking to anybody who identified themselves as working for Corona or MB at that time.

¶ 14    On June 5, 2019, Maria Bailey, plaintiff's wife, was deposed. Again, we provide Bailey's testimony as is relevant to this appeal.

¶ 15    In regards to the November 2014 incident, she testified that someone from MB, whose name she could not recall, came to the property to let her and plaintiff in after they were locked out. She did not recall the date this occurred or any specifics of the conversation other than that the individual apologized. Bailey also did not recall whether the individual was wearing a uniform or if there was any insignia on the individual's vehicle. She further testified that, other than this person, she did not have any conversations with anyone from any company regarding the lockout. She was aware of two neighbors who observed an individual changing the locks and boarding up the property, but she could not recall their names. In regards to the April 2015 incident, Bailey could not recall the date on which she and plaintiff were locked out. She also did not recall getting back into the property after the second lockout. She testified that she did not recall a notice affixed to the property on either of these occasions.

¶ 16                    C. Plaintiff's Motions for Summary Judgment

¶ 17    On June 17, 2019, plaintiff filed motions for summary judgment as to each defendant. In his motions, which contain similar arguments, plaintiff asserted that there was no genuine issue of material fact due to the "clear line of possession concerning the key to the locks which were changed" on the property. According to plaintiff, this "clear line of possession" is as follows: (1) Citizens ordered MB to conduct an interior inspection of the property; (2) MB ordered Shafer to perform the inspection; (3) Shafer conducted the inspection, changed the locks, and noted in his report that Corona was on site at the time of the inspection; (4) plaintiff contacted Citizens, MB,

and Codilis regarding the lockout; (5) Codilis informed plaintiff that MB would provide the key to the property; (6) Shafer arrived and gave plaintiff the key. Plaintiff also claimed that Citizens should be vicariously liable and referred to the doctrine of *res ipsa loquitor* for support.

¶ 18                                  D. MB's Motion for Summary Judgment

¶ 19    On July 16, 2019, MB filed a cross-motion for summary judgment.

¶ 20    Attached to the motion was an amended affidavit of Andris Slokenbergs, the owner and manager of MB. Therein, Slokenbergs attested to his knowledge of MB's business records, including the software used and how the records were accessed. He averred that the two work orders attached to the affidavit were business records made in the regular course of MB's business.

¶ 21    Both work orders were completed by Jerry Shafer. The first work order indicated that an inspection of the property occurred on November 6, 2014, but that only an exterior inspection was conducted because the inspector was unable to enter the rear door due to unsafe stairs.

¶ 22    The second work order indicates that an inspection occurred on April 24, 2015. Again, an interior inspection was not conducted because the "new owner and his contractor were on site."

¶ 23    Based on the affidavit and work orders, MB asserted that the evidence demonstrated that MB was not at the property on the dates plaintiff alleged and its inspections were limited to the exterior of the property. Further, MB contended that plaintiff presented no admissible evidence to establish that MB committed the acts alleged in the complaint, particularly where plaintiff's and Bailey's deposition testimony regarding MB's alleged involvement in the incidents was inadmissible hearsay.

¶ 24    An order for a briefing schedule was entered, requiring the parties to respond to the respective cross-motions for summary judgment by November 8, 2019.

¶ 25 On November 8, 2019, the circuit court granted MB's motion for summary judgment. However, later that day, in accordance with the court's briefing schedule, plaintiff filed a response to MB's motion for summary judgment, as well as a motion to strike the Slokenbergs affidavit. On November 25, 2019, the court entered an order setting a renewed briefing schedule for MB's and plaintiff's motions for summary judgment.[2] Both parties filed renewed cross-motions for summary judgment and their respective responses to the renewed cross-motions.

¶ 26 On January 31, 2020, the court granted MB's renewed motion for summary judgment. In the order, the court also struck the Slokenbergs affidavit because he had no personal knowledge of what occurred at the property or of "the veracity or accuracy of the attached exhibits." Additionally, the court found that the inadmissible hearsay statements from plaintiff's and Bailey's depositions did not create an issue of material fact. Thus, the court granted summary judgment because MB established that there was no admissible evidence to support plaintiff's claims against MB.

¶ 27 E. Corona's Motion for Summary Judgment

¶ 28 On July 15, 2019, Corona filed its own cross-motion for summary judgment, along with a motion to strike the exhibits attached to the Slokenbergs affidavit.[3] Preliminarily, Corona argued that the only evidence connecting Corona to plaintiff's allegations of wrongful eviction was contained in the Slokenbergs affidavit as a work order but that the affidavit constituted

---

[2] There is nothing in the record showing that the circuit court vacated its prior order granting MB summary judgment. Notably, no transcript of the proceedings before the circuit court have been submitted to this court for review, and "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

[3] Prior to the cross-motions for summary judgment, Corona had moved to dismiss plaintiff's third amended complaint. The circuit court dismissed counts II and V against Corona, which concerned the November 2014 events. The remaining counts against Corona, counts VI and VII, alleged wrongful eviction and constructive eviction as to the events occurring on or about April 20, 2015.

inadmissible hearsay and should be stricken. As such, without the affidavit, there was no evidence supporting plaintiff's allegations. Corona further contended that even if the affidavit and April 2015 work order were considered, they were still insufficient to create a genuine issue of any material fact because the report did not provide any information that Corona entered the property, changed the locks, removed any items from the property, or boarded it up.

¶ 29    On December 9, 2019, the court entered an order granting Corona's motion for summary judgment, finding that there was no admissible evidence that Corona changed the locks or boarded up the property in April 2015. Further, the court noted that "even if there was admissible evidence that Corona entered the Subject Property in April of 2015, where there is not, simply entering the Subject Property would not constitute wrongful or constructive eviction."[4]

¶ 30                          F. Citizens' Motion for Summary Judgment

¶ 31    On August 2, 2019, Citizens also filed a cross-motion for summary judgment. Citizens argued that each of plaintiff's claims failed as a matter of law. Specifically, Citizens argued that "lock out" was not a proper cause of action and that claims of "wrongful eviction" and "ejectment" were not proper actions to receive compensatory damages, as plaintiff requested. Further, plaintiff did not present any evidence that "Citizens or its agents evicted, locked out or ejected [p]laintiff from the property or conducted any of the actions alleged in the [c]omplaint." Citizens also argued that constructive eviction was not applicable to the facts because plaintiff did not abandon or surrender the premises. Finally, as to plaintiff's claim that Citizens breached the mortgage agreement by failing to provide notice of inspection, Citizens asserted that plaintiff had no evidence that Citizens accessed the property and that, to any extent that an agent accessed the

---

[4] We note that the court did not specifically address the Slokenbergs affidavit in its December 2019 order; the affidavit was later stricken on plaintiff's motion in the court's January 31, 2020 order.

property, there was a notice in accordance with the mortgage agreement which plaintiff admits was affixed to the door.

¶ 32    Attached to Citizens' motion was an affidavit from its assistant vice president, Debra Biddle. Biddle averred that Citizens' general policy is that when mortgages are in default, those properties are occasionally inspected to preserve the properties and ensure they are not damaged. This property preservation is not performed by any actual employees or agents of Citizens. During the relevant time period, Citizens retained CoreLogic, Inc. in regards to the subject property and CoreLogic in turn directed local contractors to perform the work. Biddle also averred that "Citizens does not control the means and methods of the work performed by any of CoreLogic's independent contractors" and "does not select which vendors perform work related to any property[.]" Finally, she averred that, based on her review of records related to the property, she could find no evidence that any agent or employee of Citizens visited the property, changed the locks, "boarded up" the property, prevented plaintiff from entering the property, or otherwise evicted plaintiff.

¶ 33    In his response, plaintiff claimed that there were genuine issues of material fact, such as whether Citizens directed others to enter his home, change the locks, remove his property, and board up his property.

¶ 34    On November 8, 2019, the court granted Citizens' motion for summary judgment. In the order, the court rejected plaintiff's invocation of *res ipsa loquitor* because that doctrine was only applicable to negligence actions. Further, based on Biddle's affidavit, the court found that there was no evidence that Citizens or any agent of Citizens was present at the property on the dates at issue. Finally, the court pointed out that, according to his deposition testimony, plaintiff did not have any personal knowledge regarding any relationship between Citizens and MB or Citizens and

Corona, nor any information that Citizens was involved in the changing of the locks or boarding up the property.

¶ 35    On December 5, 2019, plaintiff filed a motion to reconsider the court's finding of summary judgment in favor of Citizens. Subsequently, Citizens filed a response and plaintiff filed a reply.

¶ 36                                    G. Appeal

¶ 37    On February 24, 2020, plaintiff filed a notice of appeal regarding the summary judgment orders. On February 23, 2021, this court dismissed the appeal for lack of jurisdiction, finding that the appeal was premature where there were still pending matters before the circuit court, namely plaintiff's motion to reconsider summary judgment in favor of Citizens. *Muhammad v. Citizens Bank*, 2021 IL App (1st) 1200392-U (unpublished order under Illinois Supreme Court Rule 23).

¶ 38    Following our dismissal, on May 17, 2021, the circuit court denied plaintiff's motion to reconsider the grant of summary judgment to Citizens. On May 19, 2021, plaintiff appealed from the orders entered on November 8, 2019, December 9, 2019, January 31, 2020, and May 17, 2021.

¶ 39                                    II. ANALYSIS

¶ 40                                 A. Plaintiff's Brief

¶ 41    At the outset, we note that, in their responsive briefs, Citizens and MB contend that plaintiff's brief is violative of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) and request that this court find that plaintiff's arguments are forfeited on that basis. In response, plaintiff seemingly suggests that this court must first admonish an appellant to heed Rule 341 before disregarding deficient arguments on appeal, and further contends that his statement of facts is not "woefully lacking."

¶ 42 Illinois Supreme Court Rule 341 sets forth the required format and contents of appellate briefs. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. Although we acknowledge plaintiff's *pro se* status, that "does not relieve him from complying with these mandatory rules as nearly as possible." *Voris*, 2011 IL App (1st) 103814, ¶ 8. "Supreme court rules are not advisory suggestions, but rules to be followed." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. As such, and in contrast to plaintiff's contention that we must admonish a party before we are allowed to deem arguments forfeited, "[t]his court has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with Rule 341." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. " '[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' " *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005) (quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000)).

¶ 43 We agree with defendants that plaintiff's brief contains numerous violations of Rule 341(h) (eff. Oct. 1, 2020). In short, those breaches are as follows: (1) a points and authorities section that fails to provide an accurate summary of the points argued, the page numbers for the arguments in his brief, or any of the authorities cited in his argument (Rule 341(h)(1)); (2) an inaccurate statement of jurisdiction (Rule 341(h)(4)(ii)); (3) a grossly inadequate statement of facts that is less than two pages in length with no procedural history and no citations to the more than 3000-page record (Rule 341(h)(6)); and (4) an argument section without any citations to the record (Rule 341(h)(7)).

¶ 44 However, despite the foregoing deficiencies, we elect to consider the merits of the appeal because the issues raised are not complex and defendants filed cogent responsive briefs. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Although

we decline to strike plaintiff's brief *in toto*, we reserve the right to deem any of his arguments forfeited for violation of Rule 341 where the arguments are conclusory or incoherent without citation to the record. See *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 2d 712, 719 (1986) ("The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 45                                  B. Standard of Review

¶ 46     At issue before us is the circuit court's summary judgment orders in favor of each defendant. The purpose of summary judgment is to determine whether a genuine issue of material fact exists. *Lewis v. Lead Industries Association*, 2020 IL 124107, ¶ 14. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. In ruling on a motion for summary judgment, the pleadings and evidence must be strictly construed against the movant and liberally in favor of the opponent. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. Where, as here, the parties have filed cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the

record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. A circuit court's summary judgment ruling is reviewed *de novo*.[5] *Id.* ¶ 30.

¶ 47    A party need not prove his or her case to survive summary judgment, but he or she must "present a factual basis which would arguably entitle the party to a judgment." *Michigan Ave. Nat. Bank v. County of Cook*, 191 Ill. 2d 493, 517-18 (2000). In determining whether a genuine dispute of material fact exists, a court " 'must ignore personal conclusions, opinions[,] and self-serving statements and consider only facts admissible in evidence.' " *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1030 (2001) (quoting *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 407 (1999)). On a motion for summary judgment, facts contained in an affidavit, which are not contradicted by counteraffidavit, must be taken as true. *US Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 31. However, as mentioned, a court cannot consider evidence that would be inadmissible at trial. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203-04 (1996). Additionally, "[e]ven though a complaint may purport to raise an issue of material fact, if such issue is not further supported by evidentiary facts, summary judgment is appropriate." *Seefeldt v. Millikin Nat. Bank of Decatur*, 154 Ill. App. 3d 715, 718 (1987).

¶ 48                    C. Plaintiff's Arguments on Appeal

¶ 49    In general, plaintiff asserts that there were genuine issues of material fact in dispute and the circuit court erred in determining that plaintiff did not have any admissible evidence.[6] To that

---

[5] We note that, in plaintiff's points and authorities section of his brief, he repeatedly asserts that the circuit court's rulings were an abuse of discretion and against the manifest weight of the evidence. Those standards are not applicable when reviewing a court's ruling on a summary judgment motion.

[6] Even though cross-motions for summary judgment inherently admit that there are no genuine issues of material fact, plaintiff contends that there are such issues throughout his arguments before the circuit court and this court.

end, he makes several specific arguments that are germane to all three summary orders that we reject outright.

¶ 50    Much of plaintiff's brief is devoted to enumerating his "admissible evidence" and further asserting that the court did not give him the opportunity to present this evidence at a trial before a jury. Specifically, he contends that he was not given the opportunity to have his witnesses, including himself, Bailey, and White, testify before a jury, and that his testimony regarding Shafer should have been admitted as evidence. He further contends that defendants chose not to depose White and the court erroneously disregarded White as an eyewitness. He complains that he was not given the opportunity to cross-examine defendants at a trial before a jury on the contents of the notice and the property inspections and that he was also prevented from inspecting business records. As we explain below, however, none of these contentions have any merit.

¶ 51    We first address plaintiff's arguments regarding his own deposition testimony and that of Bailey. As stated above, only evidence admissible at trial may be considered in support of or in opposition to a summary judgment motion. *People ex rel. Madigan v. Kole*, 2012 IL App (2d) 110245, ¶ 47. Depositions are permitted to support a motion for summary judgment and may be used in the same manner as an affidavit. *Groce v. South Chicago Community Hosp.*, 282 Ill. App. 3d 1004, 1009 (1996). However, a declarant's out-of-court statement offered to prove the truth of the matter asserted is hearsay and is inadmissible unless it falls within one of the recognized exceptions to the rule. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); *People v. Lawler*, 142 Ill. 2d 548, 557 (1991).

¶ 52    Plaintiff and Bailey testified in their respective depositions that they had conversations with an individual (Shafer) who claimed he had changed the locks on the property. They also testified that their neighbors observed someone changing the locks and entering the property. These

statements were clearly offered for the truth of the matter asserted: who damaged the property and changed the locks. As such, the testimony of both plaintiff and Bailey was hearsay.

¶ 53    In an attempt to defeat the bar against this evidence, plaintiff references the party opponent hearsay exception in his brief on appeal and in filings before the circuit court.[7] We briefly address and reject the applicability of this hearsay exception in the circumstances before us.

¶ 54    "The deposition testimony of a party may contain admissions which are an exception to the rule excluding hearsay[,]" whereas the deposition testimony of a nonparty witness is hearsay and generally inadmissible except for impeachment purposes. *In re Estate of Rennick*, 181 Ill. 2d 395, 408 (1998). However, those admissions by a party are admissible as an exception to the rule against hearsay *only* when introduced by a party opponent. *Id.*

¶ 55    Here, Bailey is a nonparty witness as she has not been named in the instant action as a plaintiff, and plaintiff cannot avoid the proscription against her hearsay statements where he is attempting to admit them to bolster his own allegations. Therefore, the party opponent exception does not apply and this testimony was not admissible to support a summary judgment motion. Any reference to such deposition testimony in plaintiff's arguments on appeal will not be considered.

¶ 56    Plaintiff also argues that the Slokenbergs affidavit and the accompanying work orders demonstrated that Citizens ordered, directed, and supervised the inspection of the property and that he would have called Slokenbergs as a witness at trial. He further states that the affidavit "laid a proper business record foundation for [the work orders]." Contrarily, he also states in his reply brief that the Slokenbergs affidavit was defective and inadmissible and notes that it had been stricken.

---

[7] We note, however, that it is unclear as to what evidence he claims this hearsay exception is applicable.

¶ 57    Slokenbergs' affidavit was submitted pursuant to Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013), which provides the requirements for affidavits submitted in favor of or in opposition to motions for summary judgment. The rule requires that affidavits "be made on the personal knowledge of the affiant[ ]" and "set forth with particularity the facts upon which the claim, counterclaim, or defense is based." *Id.* "[A]ffidavits that are conclusory and fail to state facts with particularity do not strictly comply with Rule 191(a) and may be stricken." *Cordeck Sales Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 383 (2008).

¶ 58    In the case before us, plaintiff filed a motion to strike the Slokenbergs affidavit in its entirety, and the court granted that motion. In so ruling, the court specifically stated that Slokenbergs did not create the attached exhibits and had no personal knowledge of the veracity or accuracy of the exhibits. For that reason, plaintiff cannot rely on Slokenbergs' averments nor the work orders attached to the affidavit. Throughout his brief, plaintiff refers to the work orders as "MB's business records." Then, as we have noted above, he separately addresses the Slokenbergs affidavit, admitting that it was stricken, but later references the affidavit to support his argument regarding Corona. It appears that plaintiff is unaware that the "business records" are exhibits to the affidavit, and because they were also stricken along with the affidavit, cannot be used against any of the defendants to support plaintiff's arguments.

¶ 59    Regardless, plaintiff received the relief requested, and we will not question the circuit court's ruling on appeal simply because plaintiff has now changed his mind and seeks to rely on the affidavit's exhibits, but not the affidavit, in support of his summary judgment motion. He cannot have it both ways. Accordingly, any references to the Slokenbergs affidavit or the attached work orders will not be considered by this court and cannot support plaintiff's arguments on appeal.

¶ 60    Next, we address plaintiff's assertion that he was prevented from inspecting business records. He contends that "some of the business and telephone records of Codilis *** were not protected and were admissible evidence" and that he "intended to subpoena those records for trial." As with the rest of his brief, plaintiff does not cite to the record to support this contention. It is unclear precisely to what plaintiff is referring. Because he has not provided this court with citation to the record and clarified this argument to the extent that it can be ruled upon, we deem this argument forfeited. See *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 401 Ill. App. 3d 868, 881 (2010) ("[M]ere contentions, without argument or citation to authority, do not merit consideration on appeal." (Internal quotations omitted.)).

¶ 61    Finally, we address plaintiff's assertions that the court did not allow him to present his witnesses or cross-examine defendants about the inspections and notices. In response, MB and Citizens both argue that plaintiff's argument is without merit because he did not submit a Rule 191(b) affidavit to request further discovery prior to the court's ruling on the summary judgment motions. We agree.

¶ 62    Rule 191(b) provides:

"(b) When Material Facts Are Not Obtainable by Affidavit. If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing

- 17 -

documents in the possession of those persons or furnishing sworn copies thereof. The interrogatories and sworn answers thereto, depositions so taken, and sworn copies of documents so furnished, shall be considered with the affidavits in passing upon the motion." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

¶ 63    As is made clear, when a party contends that he needs to conduct further discovery before responding to a motion for summary judgment, he must submit an affidavit in compliance with Rule 191(b). See *Kim v. State Farm Automobile Insurance Co.*, 2021 IL App (1st) 200135, ¶ 58. "As a rule, a party cannot argue on appeal that a summary judgment order must be reversed because it required additional discovery if it failed to request additional discovery and attach a Rule 191(b) affidavit to its summary judgment pleadings." *Cordeck Sales, Inc.*, 382 Ill. App. 3d at 377; see also *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 48 ("Parties who fail to file Rule 191(b) affidavits cannot complain that the 'discovery process was insufficient or limited.' " (quoting *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 225 (2002))); *Intercontinental Parts, Inc. v. Caterpillar, Inc.*, 260 Ill. App. 3d 1085, 1090-91 (1994) (affirming grant of summary judgment over plaintiff's contention on appeal that it needed additional discovery, where plaintiff never requested additional discovery under Rule 191(b)).

¶ 64    Here, plaintiff did not submit a Rule 191(b) affidavit seeking further discovery. We note that our review of the record reveals that plaintiff stated in his response to MB's renewed motion for summary judgment that he was attaching "a Rule 191(b) affidavit seeking leave to open and for continued discovery." Thus, plaintiff was apparently aware of Rule 191(b) and its purposes. However, no such affidavit was attached, and we find no further evidence of such an affidavit in the record. As we have noted prior, a litigant's decision to proceed *pro se* does not excuse him from application of supreme court rules and procedures. See *Steinbrecher v. Steinbrecher*, 197 Ill.

2d 514, 528 (2001) ("*Pro se* litigants are presumed to have full knowledge of applicable court rules and procedures."); see also *Tannenbaum v. Lincoln National Bank*, 143 Ill. App. 3d 572, 574 (1986) ("Although [the] right to appear *pro se* is well established, it is equally well established that when [one] does appear *pro se*, [one] must comply with the established rules of procedure."). Accordingly, plaintiff's argument regarding the presentation of potential witnesses is without merit, and any references to these witnesses and their potential testimony will not be considered.

¶ 65    We now address each defendant's grant of summary judgment separately.

¶ 66                                    D. Citizens Summary Judgment

¶ 67    The entirety of plaintiff's argument on appeal in regards to Citizens rests on the Slokenbergs affidavit. Specifically, in his reply brief, plaintiff contends that the affidavit of Slokenbergs stated MB's utilization of cloud-based technology enables Citizens to monitor, supervise, and direct every aspect of the inspectors' work as that work is being performed. We have already stated that the Slokenbergs affidavit will not be considered by this court, where it was struck by the circuit court upon plaintiff's own request. For this reason, we conclude that plaintiff's argument in regards to Citizens is meritless.

¶ 68    Additionally, we find that plaintiff did not present any evidence to suggest that Citizens or any of its agents were involved in the activities that allegedly took place at the property on or about November 2014 and April 2015, and the allegations in plaintiff's complaint are insufficient to raise a genuine issue of material fact. Therefore, the circuit court did not err in granting Citizens summary judgment. See *Seefeldt*, 154 Ill. App. 3d at 718 (an allegation in a complaint does not raise an issue of material fact if it is not supported by evidentiary facts).

¶ 69                                    E. MB Summary Judgment

¶ 70    We next address plaintiff's argument that the circuit court erred in granting summary judgment in MB's favor where there was admissible evidence to support his claims, including his own testimony, the testimony of potential witnesses, and the work orders. Additionally, he contends that the notices affixed to the property serve as proof that MB was involved in the alleged incidents and that he submitted photographs of Shafer and his vehicle in response to requests for production of documents. Plaintiff also alleges that the circuit court was prejudiced against him and prematurely ruled on the original summary judgment motion in violation of the briefing schedule previously entered by the court.

¶ 71    In response, MB asserts that plaintiff presented no admissible evidence to the circuit court to support his claim that MB entered his property or changed the locks and thus, the court correctly granted its motion for summary judgment where there were no genuine issues of material fact. MB also disputes plaintiff's suggestion of the court's prejudice and impropriety. Rather, MB asserts that the court "went to great lengths to allow the plaintiff ample time to make his arguments" and granted plaintiff's motion to strike the Slokenbergs affidavit, and in any case, any perceived prejudicial conduct had no bearing on the basis of the summary judgment ruling.

¶ 72    We agree with the circuit court's ruling that plaintiff did not submit any admissible evidence to support his own motion for summary judgment against MB or defeat MB's summary judgment motion. As we have stated, plaintiff's own testimony and that of Bailey are hearsay and not admissible to support his motion, and the Slokenbergs affidavit was stricken based on plaintiff's motion. As such, plaintiff did not raise a genuine issue of material fact and summary judgment in favor of MB was proper.

¶ 73    Additionally, plaintiff's argument regarding the circuit court's prejudicial conduct is without merit. At no point did plaintiff file a motion asserting judicial bias or requesting a

substitution of judge. Moreover, any potential error of the circuit court in prematurely ruling on MB's motion for summary judgment was cured when the court set a new briefing schedule and allowed for renewed motions for summary judgment.

¶ 74    As to plaintiff's suggestion that his photographs of Shafer and his truck constitute admissible evidence that would defeat MB's summary judgment motion, we find that argument is without merit. First, it is unclear whether these photographs were properly submitted to the circuit court. Second, even if they were, it is unclear how photographs of this individual would raise any issue as to whether MB was involved in these incidents.

¶ 75                           F. Corona Summary Judgment

¶ 76    Finally, we turn to the circuit court's grant of summary judgment in favor of Corona. Plaintiff contends that Corona entered his property without permission and that this unlawful entry was clearly documented in the work orders, which were attached as exhibits to the Slokenbergs affidavit. As stated, that affidavit and its exhibits were struck on plaintiff's motion, and thus are not admissible and cannot support plaintiff's argument against Corona.

¶ 77    Because there was no admissible evidence submitted to the circuit court showing that Corona was in any way involved in the incidents, summary judgment in favor of Corona was proper.

¶ 78                           III. CONCLUSION

¶ 79    For the reasons stated, we affirm the judgment of the circuit court.

¶ 80    Affirmed.